The State of Ohio v. Orlett.

(No. 6743—Decided March 28, 1975.)

Franklin County Municipal Court, Criminal Division.

*Mr. Daniel W. Johnson,* for plaintiff.
*Mr. Thomas M. Tyack,* for defendant.

Fais, C. J. A preliminary hearing was held herein. The complaint filed with the clerk of courts reads as follows:

"Complainant being duly sworn states that Edward J. Orlett at Franklin County Ohio, on or about the 6th day of March 1975 did knowingly attempt to cause physical harm to George F. Dempster M/W/64 by means of a deadly weapon to wit: 1974 Ford Pinto Station Wagon, L. No. 9302 NQ Ohio in violation of O. R. C. 2903.11 (A-2) (F-2)."

R. C. 2903.11 (A)(2) provides:

"Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance as defined in Section 2923.11 of the Revised Code."

The statute creates a felony of the second degree.

R. C. 2923.11 (A) defines "deadly weapon":

" 'Deadly weapon' " means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

The only witness called to testify by the prosecution was the complainant. Complainant is the Assistant Manager of the Ohio State Parking Facility located beneath the State House. The defendant had parked his car at the garage and was exiting at the time without presenting a ticket customarily given to the cashier at the exit booth.

Complainant blocked the forward progress of the defendant's car. He was standing about one foot in front of the car when the defendant's car suddenly moved forward. Complainant stated he fell face first on the hood of the car "to keep from being run over." He described his position as near the center of the bumper. He repeated that the forward movement of the car surprised him, and as he fell forward across the hood of the car, he grabbed the windshield wipers. Complainant says he was carried for a distance of 200 feet on the hood of the car as it proceeded up the exit ramp. He maintained his balance on the hood of the car by holding onto the windshield wipers until the car stopped.

The complainant described the initial starting of the car as "normal," and there was no estimate of the speed of the car as it moved up the ramp. The defendant made no attempt to sway or flip the complainant from the hood. When the car finally stopped, the complainant and the defendant resolved the differences between them. Complainant complains of bruises to his left leg and arm.

The defendant's counsel requests that the case be dismissed for the principal reason that probable cause has not been established by the testimony of the complainant. Counsel also argues that an automobile is not to be construed as a "deadly weapon" within the meaning of 2903.11 (A) (2) and the definition under 2923.11(A).

A "deadly weapon" is defined in Black's Law Dictionary (4 Ed.), as follows:

"Such weapons or instruments as are made and de-

signed for offensive or defensive purposes, or for the destruction of life or the inflicting of injury. * * *

"One which, from the manner used, is calculated or likely to produce death or serious bodily injury.* * *"

It is further acknowledged that some weapons are per se deadly. Others, owing to the manner in which they are used, become deadly. A gun, pistol or switchblade knife are per se deadly. Other weapons can become deadly and assume deadly character depending upon the manner and circumstances of their use. There is a question of fact presented in such cases and where such a question exists, the fact must be resolved by either the jury or the court. In determining whether an instrument not inherently "deadly" or dangerous assumes these characteristics, the court may consider the nature of the weapon, the manner of its use, the actions of the user, the intent and the mind of the user and the capability of the instrument to inflict death of serious bodily harm.

This court has reviewed cases which have decided the question as to whether an automobile is or can be a "deadly weapon." This court concludes that an automobile is not per se a "deadly weapon," and the court agrees with the statement found in *Smith* v. *State* (1948), 204 Ga. 184, 187 48 S. E. 2d 860, 862; *Huntsinger* v. *State* (1945), 200 Ga. 127, 36 S. E. 2d 92. However, this court does conclude that an automobile may be so used as to constitute a "deadly weapon" within the meaning of the Ohio Revised Code. It is undoubtedly a fact that most of the reported cases involving a deadly weapon relate to an instrument that was lifted by the hand in making the assault, but there is no sound reason why the deadly nature of the instrument should be determined solely with reference to its use while lifted in the hands. Any instrument which through human control is the means of inflicting a blow *may be* a deadly weapon, viz., any instrument *so used* as likely to produce death or great bodily harm. It also does not matter that it was made specifically for some other purpose, and, if it is a thing with which death or serious injury can be easily or readily produced, this court recognizes it as a deadly weapon.

Therefore, with this definition and explanation this court concludes that an automobile *when used in a manner likely to produce death or great bodily harm,* can be classified as a "deadly weapon." See *People* v. *Clink* (1920), 216 Ill. App. 357, 358; *People* v. *Goosby* (1938), 284 Mich. 375, 378, 279 N. W. 867, 869; *Williamson* v. *State* (1926), 92 Fla. 980, 111 So. 124, 125, 53 A. L. R. 250; *State* v. *Eason* (1955), 242 N. C. 59, 65, 86 S. E. 2d 774, 779; *State* v. *Garner* (1950), 360 Mo. 50, 54, 228 S. W. 2d 604, 607.

The next question to be resolved is whether the evidence sufficiently establishes probable cause to believe the crime alleged has been committed. The crime alleged is felonious assault. It is the conclusion of this court that the defendant, on the state of the record, was not using nor attempting to use his automobile as a deadly weapon at the time and place in question.

The court, carefully and fully considering the evidence, finds that there is probable cause to believe that a misdemeanor was committed and that the defendant committed it, to-wit an assault, as defined in R. C. 2903.13:

"(A) No person shall knowingly cause or attempt to cause physical harm to another."

This section classifies assault as a misdemeanor of the first degree.

Therefore, under Crim. R. 5 (B) (4) (b), this case is retained for trial, and the defendant is ordered to appear for trial before this court when the same is duly and regularly assigned.