## State v. Cornette
## Case No. 89AP717
## Franklin County, (10th)
## Decided January 25, 1990
[Cite as 1 AOA 408]

*Mr. Michael Miller, Prosecuting Attorney, and Ms. Katherine Press, for appellee.*

*Mr. James Kura, Public Defender, and Mr. Allen v. Adair, for appellant.*

YOUNG, J.

This matter is before this court upon the appeal of Jack Cornette, appellant, from a judgment of the Franklin Country Court of Common Pleas finding him guilty of one count each of burglary, theft and felonious assault.

On February 2, 1989, Jim Clarke telephoned the police after he and his wife observed some men removing certain items from Cranbrook Elementary School. Officer McVey, the first policeman to arrive on the scene, observed a man run from the school and drive away in a blue car. Mr. Clarke testified that the blue car was the same car which he had seen driving around the area, and later parked at the school. The pursuit which Nos. 89AP-717 & 89AP-718 followed lasted several minutes and involved a number of cruisers from both Columbus and Upper Arlington. According to the testimony of the police officers involved, appellant was finally forced off the road into someone's yard, and the chase ended.

Appellant appeals from his conviction and raises the following three assignments of error:

*"FIRST ASSIGNMENT OF ERROR*
"The evidence does not support appellant's felonious assault conviction.

*"SECOND ASSIGNMENT OF ERROR*
"Appellant's burglary and theft convictions were not supported by the evidence.

*"THIRD ASSIGNMENT OF ERROR*
"The judgment entries erroneously order that the sentences imposed for burglary and felonious assault be served consecutive to one another, such sentences being contrary to the sentences pronounced in open court."

In his first assignment of error, appellant argues that his conviction for felonious is against the manifest weight of the evidence. According to appellant, the evidence does not establish that he "knowingly" attempted to cause physical harm to Officer Corrigan by means of a deadly weapon.

Section 2903.11(A) of the Revised Code defines the offense of felonious assault:

"(A) No person shall knowingly:
"(1) Cause serious physical harm to another;
"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance ***."

Three people testified concerning the circumstances surrounding the actions which gave rise to the appellant being charged with felonious assault. Officer Charles Tyne of the Upper Arlington Police Department testified as follows: I responded to the request for assistance made by the Columbus Police Department. (Tr. 154.) The blue car which was involved in the pursuit passed me in the opposite direction. I noticed that the car was occupied by two male blacks. (Tr. 155.) I turned my car around in order to pursue the suspect's vehicle. (Tr. 156.) I tried to head off the suspects' vehicle with the aid of a fellow police officer, but we were

unsuccessful. (Tr. 158.) The suspects' vehicle came to a stop in the mud and off of the road at the entrance ramp to State Route 315. (Tr. 159.) I pulled my car into the grassy area and stopped my car approximately six inches from the passenger side door. (Tr. 161.) The second Upper Arlington police officer positioned his cruiser on the pavement in front of the suspects' vehicle. (Tr. 162.) The second cruiser was eight to ten feet in front of the suspects' vehicle. (Tr. 162.) I exited my cruiser and approached the suspects' vehicle with my weapon drawn. (Tr. 163.) The suspects' vehicle kept rocking back and forth in the mud. Officer Corrigan began to exit his cruiser, at which time the suspects' vehicle "got traction *** [and] shot forward, slamming into Officer Corrigan's door, pushing the cruiser then almost perpendicular to [the suspects'] car, pushed it out of the way." (Tr. 163.) The suspects were able to escape from us at that time. (Tr.163.)

Officer Patrick Corrigan testified as follows concerning the incident off the road at the entrance ramp to State Route 315: The suspects' vehicle was off the road in a grassy area, turned around in the opposite direction for regular traffic. (Tr. 183.) Officer Tyne pulled his car up to the suspects' vehicle so that he was almost perpendicular to the suspects' vehicle. (Tr. 184.) I pulled my car up in front of the suspects' vehicle in order to block the suspects' vehicle. (Tr. 184.) As I began to exit my car "*** it looked like he was stuck, but as I got the door open, he got traction and he rammed the side of the cruiser and was pushing me out of the way so that he could get out, escape and get -- which he eventually did, and then went down the exit ramp -- entrance ramp the wrong way." (Tr. 184.)

According to the testimony of appellant, his actions that night were motivated by an intention to escape from the police and avoid being arrested. He stated that he had no intentions to hurt anyone that night.

Although the weight to be given the evidence and the credibility of the witnesses is primarily for the trier of fact, it is the duty of an appellate court to review the weight and sufficiency of the evidence when the issue is assigned as error. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230; *In re Sekulich* (1981), 65 Ohio St. 2d 13. The standard applied in reviewing the weight and sufficiency of the evidence is set forth in the syllabus of *State* v. *Eley* (1978), 56 Ohio St. 2d 169, wherein the Supreme Court stated:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

The court stated further, at page 172:

"*** [I]n considering an assignment of error in a criminal case which attacks the sufficiency of evidence, a certain perspective is required. This court's examination of the record at trial is limited to a determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' ***"

This court recognizes that an automobile can be classified as a deadly weapon "*** when use in manner likely to produce death or great bodily harm ***." *State* v. *Orlett* (1975), 44 Ohio Misc. 7, paragraph two of the syllabus. However, in the present case, the evidence simply does not establish that appellant knowingly attempted to cause physical harm to officer Corrigan with his automobile. All of the evidence supports the theory that appellant was simply trying to elude the police. Accordingly, appellant's first assignment of error is well-taken and is sustained.

In his second assignment of error, appellant contends that his convictions for burglary and theft were also against the manifest weight of the evidence.

Jim Clarke, the neighbor who telephoned the police to report the activities which he was witnessing, testified on behalf of the state. According to his testimony, he saw a dark blue hatch-back automobile parked at the school during the events which later transpired. (Tr. 31-32.) He saw two individuals enter the car, back out of the parking lot without turning on their lights, and drive away. (Tr. 34.) The same car circled the block a few minutes later and then parked. (Tr. 34-35.) Mr. Clarke saw the two occupants of this same car walking cautiously around the school yard. (Tr. 36-37.) He saw the men from the car "*** working on the window. ***" (Tr. 38.) From the windows of his house, Mr. Clarke witnessed people, including the two men from the dark blue hatch-back, removing items from the school and carrying them down to the creek beyond the

school. (Tr. 39-42.) Mr. Clarke met Officer McVey outside of the school. (Tr 46.) As they spoke, Mr. Clarke saw a man standing in the shadows by the school. (Tr. 47.) As Officer McVey approached this man, the man ran to the same dark blue hatch-back which Mr. Clarke had seen before, and the car sped away from the scene. (Tr. 47-48.) Mr. Clarke was unable to identify any of the men he saw that night but he was able to identify the dark hatch-back which appellant was driving when the police finally apprehended him. (Tr. 44.)

Officer Timothy McVey, the first police officer to respond at Cranbrook Elementary School, was met by Jim Clarke. (Tr. 120.) Officer McVey walked towards the school and "*** came face to face about 20 feet with two male individuals walking towards me, and as they realized I was a police officer, they said something and took off running away from me." (Tr. 121.) Officer McVey chased after the two men, but they jumped into a car and fled from the school. Officer McVey gave a description of the car to the police dispatcher. (Tr. 121.) At the trial, Officer McVey identified the car in which the suspects had fled. (Tr. 124.) This is the same car identified by Jim Clarke and the same car which appellant was driving when he was finally apprehended.

Appellant does not deny that he sped away from the Cranbrook School that night in the same dark blue hatch-back automobile identified by the state's witnesses. However, according to appellant's testimony, he was not robbing the school that night. Appellant claims that he and a friend stopped at the school because the appellant had to relieve himself. (Tr. 241.) As he approached the trees, he saw the legs of two people standing by some sort of bundle. He decided to get into his car and leave. (Tr. 234.) As he was leaving, he passed two Upper Arlington police cruisers. (Tr. 234-235.) He decided that something must be going on in the area and that he should leave the area to avoid any trouble. (Tr. 235.) Suddenly, he noticed that a police car was in pursuit of him. He was scared so he did not stop his car. (Tr. 235.) Appellant also testified that the passenger who was in the car with him, went up to the building with him and that both of them hurried back to the car when they saw the two men standing in the dark. (Tr. 235-254).

Appellant is correct that the evidence relied upon to convict him of the charges of burglary and theft is predominantly circumstantial in nature. The Supreme Court has stated as follows concerning the use of circumstantial evidence when a defendant presents exculpatory evidence:

"Circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, syllabus.

However, whether a theory of innocence is reasonable must be determined in light of the weight and credibility that the finder of fact gives the evidence. An appellate court may reverse a conviction based in part on circumstantial evidence only if the evidence is insufficient as a matter of law to enable the fact finder to exclude a reasonable hypothesis of innocence. *State* v. *Sheppard* (1956), 165 Ohio St. 293; *State* v. *Graven* (1978), 54 Ohio St. 2d 114. Where reasonable minds can differ on the state of the evidence, the case should be submitted to the jury and their verdict should be affirmed on appeal. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261.

In the present case, the evidence presented was sufficient to support the conviction for burglary and theft. The jury obviously did not believe appellant's testimony concerning the reasons for his presence in the area that night, especially in light of the efforts of appellant to elude the police. Accordingly, appellant's second assignment of error is not well-taken and is overruled.

In his third assignment of error, appellant asserts that the record establishes a variance between the sentence pronounced in open court on May 12, 1989, and the sentence actually imposed as reflected in the court's judgment entries filed on May 15, 1989. Based upon the transcript, appellant was to receive concurrent sentences for burglary and felonious assault. However, the entries provide that appellant serve the sentences consecutively. Therefore, appellant contends that this matter must be remanded with instructions directing the trial court to impose the original sentence.

Appellant argues correctly that the sentence read in open court differs from the sentence journalized in the court's entries. However, such a difference does not require that the trial court be directed to impose the sentence read in open court. A trial court may change a sentence at any time before the sentence is journalized. *Lee* v. *State* v. (1877),

32 Ohio St. 113, paragraph one of the syllabus; *State* v. *Harris* (1981), 2 Ohio App. 3d 48, 49.

According to Crim. R. 43(A), a defendant has the right to be present at the imposition of sentence. Therefore, appellant is entitled to be present at a resentencing hearing, in accordance with Crim. R. 43(A), if the court determines that the sentence is to be changed. See *State* v. *Jones* (Dec. 1, 1987), Franklin App. No. 87AP-344, unreported (1987 Opinions 2859). However, in light of our disposition of appellant's first assignment of error, it is necessary that any action be taken to provide appellant with a resentencing hearing.

Based on the foregoing, appellant's first and third assignments of error are sustained. Appellant's second assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part.

*Judgment affirmed in part; reversed in part.*

STRAUSBAUGH and FAIN, JJ., Concur.

FAIN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.